[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISQUALIFY
The plaintiff and counterclaim defendant, Chemical Bank ("Chemical"), formally Manufacturers Hanover Trust Co. ("MHT") has filed a motion to disqualify the law firm of Proskauer, Rose, Goetz Mendelsohn ("Proskauer") from acting as counsel for the defendant and counterclaim plaintiff, Stamford Hotel Limited Partnership ("SHLP"). The parties have filed memoranda and affidavits in support of their respective positions, including opinions in the form of affidavits, from experts in the field of legal ethics.
The present litigation was instituted by a complaint dated May 13, 1991 by MHT against SHLP to foreclose a mortgage on hotel property located in Stamford, Connecticut. Proskauer had represented SHLP prior to the institution of the litigation, and entered its appearance in June of 1991.
Simultaneously, with the filing of the foreclosure action, MHT sought the appointment of a receiver to supervise the hotel's administration. Expedited discovery was conducted with respect to MHT'S application for the appointment of a receiver and, as a result of that discovery, SHLP filed, on August 26, 1991, a counterclaim against MHT based upon allegations of fraud, conspiracy to defraud, breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, breaches of covenants of good faith and fair dealing and violations of the Connecticut Unfair Trade Practices Act ("lender liability claims").
On July 15, 1991, a proposed agreement to merge Chemical and MHT was announced to the public. On or about November 1, 1991 the stockholders of manufacturers Hanover Corporation, MHT's parent, voted to approve the merger. On December 31, 1991 the holding company of MHT merged into the holding company of Chemical and MHT became, and Chemical remained, a subsidiary of the holding company of Chemical. On June 19, 1992, the legal merger of the banks occurred and MHT ceased to be a separate legal entity and became a division of Chemical. Beginning in January of 1992, MHT and CT Page 11123 Chemical began to integrate their operations including their legal departments and, by April 192, in-house attorneys for Chemical became authorized to handle law suits involving MHT and, conversely, in-house attorneys for MHT became authorized to handle law suits involving Chemical.
Since 1989, Proskauer has represented Chemical in several employment related lawsuits. At least two of the cases are still pending and were pending at the time of the institution of the present action. Proskauer has also performed substantial legal services on behalf of Chemical with respect to the pending employment related cases.
After the announcement on July 15, 1991 of the merger between Chemical and MHT, Proskauer became aware of a possible conflict with Chemical. A Proskauer office memo, dated July 16, 1991, from one partner to another, noted that SHLP "is contemplating a major lender liability action against Manufacturers Hanover." The memo then states:
 "With the announcement yesterday that Chemical Bank is merging with Manufacturers Hanover, it appears we will be threatening a law suit technically against Chemical Bank and may become adverse to Chemical Bank when the merger is effective."
The memo then requested a consultation to determine whether Proskauer would be able to go forward on behalf of SHLP against MHT and eventually Chemical. in mid-July of 1991, a partner of Proskauer contacted the Senior vice President and Associate General Counsel of Chemical ("Daniele") with respect to a waiver of any conflict with Chemical arising out of the foreclosure action commenced by MHT. Daniele recalls granting a waiver on the basis of a straight forward foreclosure action which was described to her at that time as "not a big deal." During the conversation no mention was made by Proskauer of the fact that potential lender liability claims were contemplated or the fact that such claims might be asserted against MHT. No letter confirming the "waiver" was forwarded by Proskauer, although a draft letter was prepared. The draft letter refers only to the fact that various claims relating to certain secured loan transactions have or will be asserted by both sides to the dispute.
It is therefore apparent that by mid-July of 1991, Proskauer was aware of a potential conflict with Chemical; a "waiver" of that conflict was obtained without disclosing the fact that major lender liability claims upon Chemical's previously granted approval of Proskauer's continued representation of SHLP. CT Page 11124
On April 9, 1992, the general Counsel for Chemical received a copy of a notice, filed by Proskauer on behalf of SHLP, to take the deposition, on May 1, 1992, of Mr. McGillicuddy, the Chairman and Chief executive Officer of Chemical. Prior to that time the General Counsel was not involved in the prosecution of the litigation of SHLP and, if he knew of its existence at all, he did not know that Proskauer was representing SHLP; The first time that the General Counsel was aware that Proskauer was representing Chemical in other litigation matters since he knew that they had done work for Chemical in the past. Shortly thereafter, he was informed by an attorney on the staff of Chemical that Proskauer was currently representing Chemical in pending litigation. On April 17, 1992, the General Counsel for Chemical wrote to Proskauer requesting that they withdraw from representation of SHLP. Thereafter, communications were exchanged between Proskauer and Chemical including a letter, dated May 14, 1992, from a Proskauer partner to the General Counsel or Chemical noting that the documents provided make plain that a waiver was granted to Proskauer . . . permitting us to continue our representation of SHLP."
Chemical asserts that Proskauer should be disqualified from representation of SHLP in the present litigation on the basis of a violation of Rule 1.7(a) of the Connecticut Professional Conduct which provides, as follows:
 (q) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
 (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client: and
(2) each client consents after consultation.
SHLP asserts that the Motion to Disqualify should be denied because: (1) chemical created the conflict by virtue of its merger with MHT and should therefore not be allowed to penalize SHLP through a disqualification of its attorneys; (2) the balance of equities tilts plainly in SHLP's direction even if the issue of which party created the conflict were not pertinent; and (3) the tactical timing of the motion, on the eve of an important deposition and long after Chemical was aware of the conflict, precludes disqualification.
"When a client engages the services of a lawyer in a given piece of business, he is entitled to feel that, until that business is finally disposed of in some manner, he had the undivided loyalty of one upon whom he looks as his advocate and his champion." Grievance Committee v. Rottner, CT Page 11125152 Conn. 59, 65 (1964). The protection of the relationship described in Rottner, and the duty of loyalty thereby created, is encompassed by Rule 1.7. "Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated." Comment to Rule 1.7. while there may be circumstances in which a lawyer may act as an advocate against the client, a charge of fraud on the part of the client is not one of those circumstances. See Comment to Rule 1.7 ("a suit charging fraud entails conflict to a degree not involved in a suit or a declaratory judgment concerning statutory interpretation"); see also, Manoir-Electroalloys Corp. v. Amalloy Corp.,711 F. Sup. 188, 196, (D.N.J. 1989).
SHLP does not contest the fact that a conflict exists but, rather, asserts that disqualification in the present litigation is not the appropriate remedy. SHLP asserts that Proskauer's conflict of interest arose solely as a result of the merger of MHT and Chemical which occurred after MHT had initiated the present litigation and after Proskauer began its representation of SHLP. Thus, SHLP asserts that motion for disqualification should be resolved on the basis of the prejudice that will accrue to SHLP as a result of Proskauer's forced withdrawal. Specifically, SHLP relies upon Tentative Draft #4 of the Restatement the Law Governing Layers ("Restatement") which it asserts reflects the appropriate analysis upon which to determine merger-created conflicts. Section 209, Comment e, of the Restatement provides, in part, as follows:
 "thus, a lawyer may not sue a current client on behalf of another client, even in an unrelated matter, unless consent it obtained under the conditions and limitations of 202. Because what is at stake in such cases is the lawyer's loyalty, the rule should be applied so as to minimize the impact on the choice of counsel by the affected clients. Restraint is particularly appropriate when the conflict is created by a merger or other event that occurs after representation has begun. See 212 Comment d.
Illustrations:
 3. Lawyer represent Client B in seeking a tax refund. Client A wishes to file suit against client B in a contract action wholly unrelated to the tax claim. Lawyer may not represent Client A in the suit against client B as long as Lawyer represents Client B in the tax case, unless both clients consent. On Withdrawal, see 213, Comment c.
4. the facts being otherwise as state in Illustration 3, Client CT Page 11126 A's contract action is against Corporation C which is not Lawyer's client. After A's suit has been filed, C is acquired by Lawyer's client B, thus creating the conflict. Unauthorized use of confidential information would not be an issue in such a case, and any remedy imposed by a tribunal should minimize adverse impact on the parties. Because the action of B created the conflict, Lawyer may withdraw from pursuing the tax claim on behalf of B, for example, but continue to pursue the contract action. Compare the discussion at 213, Comment e. On the possibility of consent in advance in certain cases, see 202, Comment d.
SHLP therefore urges that the Motion to Disqualify be denied and relies upon such cases as Gould Inc. v. Mitsui Mining and Smelting Co., 738 F. Sup. 1121 (N.D. Ohio 1990) and Ex parte Am South Bank N.A., 589 SO.2d 715 (Ala.Sup.Ct. (1991).
SHLP's position with respect to merger created conflicts has merit as far as it seeks to balance the equities so an not to penalize the client who did not cause the conflict. Under such an analysis, consideration could be given to a withdrawal by Proskauer as attorneys in the employment related litigation. See, Pennwalt Corp. v. Plough Inc., 85 F.R.D. 264 (D. Del 1980).
The difficulty with SHLP's position arises from the fact that it fails to give appropriate weight to the events that transpired after July 15, 1991, when the proposed merger was announced. In mid-July, Proskauer was aware that a conflict would inevitably exist, upon completion of the merger, as a result of its representation of SHLP if it were to file the lender liability claims which it then contemplated. Even if Proskauer were constrained from discussing with Chemical the existence of potential lender liability claims in July of 1991, any such restriction would have been removed when the counterclaim was actually filed on August 26, 1991.
Where an attorney has two clients with adverse interest, the attorney must do something: either withdraw from representation or disclose the conflict. Tomczuk v. American Mutual Insurance Co., 9 Conn. App. 194,197 (1986). Proskauer did neither. The purported "waiver" obtained from Chemical in Mid July of 1991, without disclosing the contemplated lender liability claims, and the failure to discuss the issue with Chemical after the claims were actually filed, does not comply with the "consultation" required by Rule 1.79(a)(2) nor does it comply with the mandate to disclose the conflict. "Because the danger of a conflict of interest is inherent in any multiple representation, an attorney must CT Page 11127 disclose more than the fact that he is undertaking to represent more than one client. Full disclosure requires the attorney to explain to the client in detail the risks and foreseeable pitfalls that may arise in the course of the transaction so that the client can understand the reasons why it may be desirable for him or her to have independent counsel." Acheson v. White, 195 Conn. 211, 215 n. 4 (1985).
While the merger was not complete until June of 1992, an earlier date is more appropriate for an analysis of conflict issues. Having obtained a waiver in mid July of 1991, on the basis of an incomplete disclosure of relevant facts, a duty to disclose the existence of the lender liability claims existed when those claims were filed in August 26, 1991. It is apparent that Proskauer never disclosed the lender liability claims as being relevant to a conflict issue until the issue was raised by Chemical's General Counsel in April of 1992 and, in May of 1992, Proskauer was still relying upon the July waiver to justify their continued representation of SHLP.
SHLP's claim that Chemical was aware of the multiple representation is unavailing. It is the duty of the attorney to make a full, frank and complete disclosure of all relevant facts and circumstances and constructive notice or a duty upon the client to determine the facts is not a sufficient substitute for the fulfillment of that duty. See such cases as International Business Machines Corp. v. Levin,579 F.2d 271, 282 (3rd Cir. 1978); Manoir-Electroalloys Corp. v. Amalloy Corp., 711 F. Sup. 188, 195 (D.N.J. 1989); Ransburg Corp. v. Champion Spark Plug Co., 648 F. Sup. 1040, 1046 (N.D. Ill. 1986); In re California Canners Growers, 74 B.R. 336, 344-45 (Bankr. N.D. Cal. 1987).
If the disqualification had arisen at an earlier date, consideration could have been given as to whether withdrawal from the employment related lawsuits was an appropriate resolution of the issue under tentative Draft #4 of the Restatement. While the "possibility" of withdrawal from the employment related lawsuits may have been raised before the filing of the motion for disqualification, (July 24, 1992), the offer to withdraw as counsel in those cases was made by Proskauer in a letter dated August 10, 1992. That offer was rejected by Chemical. However, the offer to withdraw came too late in the light of the unfulfilled obligation to disclose all relevant facts and circumstances upon the filing of the lender liability claims.
Proskauer claims that the present motion to disqualify is simply a tactical maneuver which resulted from the filing of the notice of the deposition of Mr. McGillicuddy. However, there are no facts submitted to the court which indicate that Chemical, or any of its CT Page 11128 employees, unduly delayed in raising the issue of disqualification after having knowledge that a basis for such a claim existed. The General Counsel of Chemical first learned that Proskauer represented SHLP in the foreclosure on April 9, 1992.
After making inquiry, the General Counsel wrote to Proskauer on April 17, 1992, requesting the withdrawal of representation of SHLP. Such a state of facts do not establish that Chemical unduly delayed raising the disqualification issue. Accordingly, the Motion to Disqualify Proskauer is hereby granted. However, in order to facilitate the transfer of responsibility, all proceedings in the above entitled matter are hereby stayed for 60 days from the date hereof.